With that said, let me call upon Mr. Dorganis to go forward on behalf of the appellants. You have reserved two minutes for rebuttal. Yes, if I may, Your Honor. Tom Dorganis for the Commonwealth Appellants, and I'd like to reserve two minutes for rebuttal. The question here on remand from the Supreme Court is whether the State Courts unreasonably rejected Washington's Confrontation Clause claim that his co-defendant statement was insufficiently redacted and incriminated him in the murder of Gertrude Richardson and William Dutch. The heart of your argument, as I understand it from your supplemental submission, is the only way to conclude that these phrases refer to Washington rather than someone else is to go beyond the four corners of the confession and use inferences derived from the other evidence in the case. That's the heart of your argument. That's correct, sir. That's it. And by virtue of that position, you have implicitly accepted that what is in this statement, what the statement constitutes, is corroborative evidence, right? We just can't consider that corroborative evidence. That's correct, but it is corroborative evidence where it would be if the jury had not been instructed not to take it against the co-defendants. All right, so this case is certainly not Richardson v. Marsh, right? No, I would say that Richardson actually presented a similar question. Richardson was not just a redaction. That was major editing going on. Now, that's true, but the basic circumstances in Richardson, that is... The mere existence of Marsh was totally eliminated from the statement in Richardson. Correct, but the fact of the conversation in the car was not eliminated. That's non-evidence, then. If the very existence of Marsh was eliminated, then there is no Marsh evidence, which is certainly not this case because there is Washington evidence in the brutalized statement, right? I think, with respect, I think you're looking at... You conceded that it's corroborative evidence. Well, but I believe that the Richardson statement was corroborative evidence, too. There's more than one way to be corroborative evidence. It doesn't actually explicitly have to name the defendant. But remember, in Richardson, the testifying co-conspirator talked a lot about the circumstances. Let's go first back to Bruton, the first of the trilogy. Okay. Clearly, the statement in Bruton, facially incriminated. Correct. Correct? Correct. In Richardson, even the existence of Ms. Marsh was in the statement by the co-defendant. Correct. Okay. Here, what do you have? Here, you have a statement here by Robby. Okay. That's the non-testifying co-defendant's statement that we're dealing with here. Robby's statement clearly identifies and incriminates somebody who he calls a driver, among other things. Correct? Correct. And does so four times, Mr. Dulkin. Four times. But the question is... Now, let me finish, if I may, please. Because in the course of this redacted, Brutonized statement, four times the descriptive noun, the driver, is used about someone that Mr. Robby also says he knows and has known for about ten years. How is that something that in ordinary discourse could be considered to not give rise to a suggestion that this statement has somehow been altered? To put it another way, why is that not the situation from Gray that the majority, through Justice Breyer, suggests all the juror needs to do is raise his eyes toward counsel? Because in Gray, the redactions were obvious. It's not the question of the number of times they were repeated. They were the use of the word blank. The use of the blank space in the written statement. Those are facially incriminating within the four quarters of the statement. That's what Gray was. But that's not all that Gray talked about. Gray talked about things... They talked about other redactions. Gray talked about things, but... Gray talked about a class of redactions. That's exactly right. That would be inside Bruton. No, Gray... A class of redactions. What Gray says is it makes a distinction between obvious deletions, obvious redactions, and non-obvious redactions. And the whole thing of Gray is that obvious redactions are improper. Non-obvious redactions from the face of the document, they don't even go there. They're not even holding that yet. Does that replace a proper name with an obvious blank in the word delete, a symbol, or similarly notify the jury that a name has been deleted or similar enough to be under Bruton's protection? Why does not the forensics here of the driver, about someone Waddy knew for about 10 years not constitute something that notifies the jury? Well, first of all, there was no evidence in the case about how long Waddy and Washington knew each other. There was evidence in the case about how long other people in the case knew each other. But as I understand it, there was the evidence... The only evidence about how long Washington had been part of the gang was from a different... And in any event, even if that were true, even if there were direct evidence on that question, the court needs to... The actual duration of how long Waddy knew Washington isn't the key. As I read the trilogy, the key is does the reference to knowing him 10 years therefore raise another fact that makes the jury more curious and less able to follow a limited instruction? Your Honor, with respect, what I think, what I'm hearing is the arguments about why Richardson and Gray should apply here, but the question under White v. Woodall, the Supreme Court remanded for this, the question is whether the Supreme Court has already decided that to the extent that any disagreement is beyond what fair-minded persons would... So you're saying we're not allowed to go back and say this is not an extension at all? We can decide this in the four corners of the confession. If the court concludes that it is not an extension, obviously the court can reject these redactions. Why do we think it's an exception when the majority in Gray states, this court has similarly assumed that nicknames and specific descriptions fall inside, not outside, Brutus' protection? The specific description in Gray was the one-eyed man with a limp. An objective description. An objective description... It doesn't say that. It uses the general term specific descriptions. You would agree that driver is a descriptive noun. It's a descriptive noun, but I would also agree that it is only incriminating when linked to other evidence. The Supreme Court has never held that a redaction using a facially neutral or non-obvious deletion violates the Confrontation Clause. The Supreme Court has never held that a redaction that only becomes incriminating when linked to other evidence violates the Confrontation Clause. The Supreme Court has never issued guidelines as to when contextual linkage might be too much. Do you not think it matters that in that trial courtroom there are three defendants, presumably as trials unfold, and I've been in one heck of a lot of them, they're seated close to one another and close to their counsel. Three of them. And Waddy is one of them. And his statement says what it says, so Waddy is obviously not the shooter or the driver. Two people sitting next to him. He's using two descriptive terms. And you don't think that that is highly suggestive such that what we are talking about is a statement that poses substantial and injurious effect here on Mr. Washington? No, Your Honor. I think that in Richardson and Gray, both of those cases involved a similarly small number of defendants. It's not that there is no danger of incrimination. The important thing is that Bruton was the exception to the general rule that the jury can follow its instructions and is presumed to follow its instructions. And that exception, especially given the Supreme Court's stated policy that joint trials are to be favored, that exception, the Bruton exception, shouldn't be interpreted to be any larger than it needs to be. When Bruton, what the court said is that the main... Justice Scalia, in Richardson v. Marsh, emphasizes the narrowness of the exception. I grant you that. I don't see how this is a broadening of the exception, however, when you have the kinds of facts that the questions here have suggested to you are patent from the four corners of the statement together with the presence of the three defendants in counsel. I guess we just disagree. My feeling is the four corners of the statement, if you read it, the test is in Gray. Gray says, take the statement, if it were the very first thing introduced at trial, would it be facially incriminating? Now, Your Honor says that if you look at the number of people involved in the statement, the number of times the pronouns of the redactions are repeated in the statement, and the number of co-defendants, that's enough. I think that's pretty clearly not enough. I think really it becomes incriminating only when linked to other evidence, and the Supreme Court has never, ever invalidated a Bruton, a redacted statement based on linkage to other evidence. And in Richardson, in fact, it said that that's distinctive. Gray. They did in Gray. No, in Gray, with respect, Your Honor, they said that on the four corners of the statement, deleted, deleted, blank space, all the jurors have to do is lift their eyes and look to the defense table. There is no question about other evidence in the case. Okay, and why isn't this statement equally facially incriminating? Well, because, let's take, for example. Particularly at the time, particularly at the time when this statement's offered four days after Taylor testified. Now, the jury already knows, based on Taylor's testimony, that Washington's the driver. Well, we go back to Gray, and the test in Gray said, where the inferences at issue are inferences that a jury ordinarily could make immediately, even where the confession, the very first item introduced at trial. Here, what we have is not deleted, where a juror's like, well, somebody took their name out of this. This statement was redacted and replaced with deleted. You don't have to be Sherlock Holmes to figure out there was a redaction going on. Here, the language is natural. There is no immediate conclusion. Well, I guess that's the basic area of disagreement. The language is natural, right? I mean, that's pretty much what it's coming down to. Your suggestion that the language in the statement is natural and the counter to that, that repeating four times the term of the driver about someone, the giver of the statement, knew, and I'm unable to find, and you may well be correct, that the statement doesn't say 10 years. What it does say is for a long time. For a long time. That's correct. No. I'm sorry. Like 10 years. Like 10 years. It doesn't say exactly. It says for a long time, like 10 years. Yeah. Right, but again, there was no evidence. As far as I remember, and maybe I'm wrong, but as far as I remember, there actually was no direct evidence of how long Roddy, the statement giver, knew James Washington. And these people all knew each other for a long time. There was no differentiation between one and the other.  Are you arguing this is an extension under Wake v. Whittle? Absolutely. Yes, absolutely. Absolutely. Okay. Yeah. Among other things, but yes. But that's your argument. That's basically the argument. Okay. Thank you. We'll have you back on rebuttal, Mr. Dilganis. Mr. Rowe. Good morning. Mr. Rowe, this case has long outlasted your students. It has, Your Honor. They're very successful in the practice of law by now. More successful than me, sad but true. May it please the Court, I'm here today on behalf of James Washington and would like to reserve – well, I don't need to reserve rebuttal, so now that I understand how we do this on GVR, so I understand the ordering. Excuse me. We are here on remand requiring the Court to reassess its prior decision granting habeas relief in light of Whittle. And my fundamental position is that there's no need here to extend Gray. The Gray applies. And that Whittle says that extensions are impermissible. We're not asking – I'm not asking for an extension. So you're arguing that this can be done within the four corners of the – this can be decided within the four corners of the confession? Your Honor, I am arguing that, yes. However, I would say that there are other factors that are within the scope of the Bruton-Richardson-Gray triumvirate. They're also applicable here. What are they? I mean, if we're sticking within the four corners of the statement, what are these other factors then? Well, I think that Gray, for starters, says that ordinarily, if the quote is, ordinarily you could deal with this immediately. When I, as a lawyer, hear the term ordinarily, that would say, well, sometimes this principle applies, even if you couldn't apply it immediately just as a statement being read as the first-off document in the case. And to me, the principle of Gray is that if a redacted statement makes an obvious accusatory reference to a defendant, that statement is impermissible under Bruton. If you look at the tension that occurred or the decision in Gray itself, Justice Scalia, in dissent, says, wait a second, we're going beyond the four corners of the document. We're going further than just the facial reference on the document. And to me, that's a pretty good observation. You're arguing the dissent? No, I'm arguing what the dissent observed about the Gray decision, that the Gray decision was going, wasn't limiting itself to a specific reference or just the face of the statement, but it was dealing with any circumstance where a statement, a redacted statement, made an obvious accusatory reference to the co-defendant. And so if we're not, I submit that the Commonwealth here is attempting to advance the position in Justice Scalia's dissent that we should just look at the statement and nothing else, no other circumstance in the case is relevant at all. And that's the way this should be done. Well, that's not what the Gray decision held. The Gray decision held in these circumstances, this is accusatory. So there's no extension if that's an accepted principle. Do you know what the record shows with respect to when the redactions that were performed here were completed? Was it prior to the commencement of trial? Was it sometime during the course of trial? Your Honor, as I read the record, it's not completely clear. There's some dialogue as to when the redactions, the court had some involvement in this, and there's ongoing dialogue. The court always has involvement in it. The court has to approve the redactions. I have routinized many a statement in an earlier life. But what boggles my mind about this case, and it's simply the way it unfolds, because what I'm about to say does not implicate the narrow inquiry that we have upon remand pursuant to White v. Woodall, but it is that if the redaction was made prior to the commencement of trial and you then have an opening statement made that clearly suggests that Washington is the driver, that's what you're going to hear. And then three days into trial, the Commonwealth calls Taylor as a witness, and Taylor of course names the defendant Washington as the driver. Then the statement comes in when? Shortly, a couple of days after, I think, Taylor's testimony. Right. One, two, three. My point is that a trial judge is always in a position to make changes to the redaction, which is what seems to me here to be almost mind-boggling, that what did not take place was a redaction, if you can call it that. I call it a major editing job consistent with what happened in Richardson v. Marsh. The Commonwealth and the court could have completely eliminated what took place here had they regrouped, taken the statement as redacted, and did a major editing job based on the fact that Taylor had fingered Mr. Washington. Your Honor, I agree. This trial took place in 2001, right? I believe that's correct. Bruton came to us long ago in the 60s. Then we get Richardson v. Marsh. Then we get all of them before this trial took place. And, Your Honor, this is not a new thing for jurists to deal with things such as motions to eliminate. There are instances where, as a trial develops, it is necessary for the court to say, now wait a minute, when you proceed, we are going to need to handle a matter in a certain way. And essentially that's what's occurring here. I can't tell you whether or not, just trying to be candid in terms of my reading of the record, I can't quite tell whether this redacted statement was finalized prior to the prosecutor's opening. I don't know. There's some dialogue. It may well have been. We don't know. But certainly, if that was the case, the opening is relevant. And I would submit the defense counsel here is saying, prior to the reading of the statement, the defense objection is clear. He says that it is clear as a bell that this statement refers to my client. I'm sure you agree with my general point that there is a huge variety of ways that this statement could have been edited so that its proper use, which was as inculpatory of Wabi, could have done only that, inculpate Wabi and avoid reference to others. Yes, Your Honor. He in fact admits participation in the shooting. He said, I was there when he was shot. He had a couple versions. But eventually, if you want to have a Marsh-type statement, he comes around and says, I did it. The purpose of the principle of the Woodall case is that the court should not extend the holding of a prior Supreme Court case. But the Wadi court itself, excuse me, the Woodall court recognizes that it's dealing with legal principles and the factual circumstances of a case may vary. The court says here that, quote, certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. And I submit that that's the case here. We have a trilogy of cases that develop a rule that obvious references to a defendant should not be used. And we have here an obvious reference. I noted when I was reading the Gray case again that they referenced in that case the Supreme Court's decision in Richardson against California. And the Richardson case was a situation where there was a crime and there were three black defendants and one white defendant. And the statement at issue said, well, who was there? Well, there were some people there and a white guy. So that was a, in Richardson, the court focused on the absence of a showing of prejudice such that it didn't have occasion to throw out the case on the basis of the questionable statement. But it's very clear from that decision that a reference that clearly identifies the defendant in a manner that is accusatory is a impermissible statement. Going back in part to a question that Judge Smith asked you, one of the troubling parts of this case to me has been the state court's reliance, in this case, the Pennsylvania Superior Court's reliance on Commonwealth v. Travers. And do you think that Commonwealth v. Travers appropriately states a law as established by the Supreme Court? No, Your Honor. Why not? The concept of Travers, which, and I would submit that there is no, I want to emphasize, I'm not asking for an extension of law. I'm not asking, well, should we go one way or we could go the Travers way or we could go some other way. The Travers way is a bad idea. I'm not saying that.  Because Travers has this notion that if there is a statement that is neutral, that uses words that don't say James Washington, that it's okay. And the concept, as I read Gray and the line of cases leading to Gray, is that we look at the circumstances of the case and it cannot be, there can be no obvious reference. So it's a circumstance, the test is one that looks at the trial circumstances. And I would suggest that perhaps the timing of Travers, which was decided about six months before this trial, may have been part of the reason why the redaction, as it appears, appeared that way. And as I understand the Woodall case, the Woodall case is saying not that we have to enforce Travers, but what it's saying is that in habeas we can't go further than Gray. And I'm not asking the court to go further than Gray. I've got a question for you. We've talked about Taylor's testimony about the driver. Part of the confession is that the driver stays with his mom in Hill Creek. Do you know if there's any testimony in the record as to somebody testifying where Washington lived? Is that another way to connect this person with Washington's person? My understanding is that, and I may just not know the record well enough, but Gray Hayler identifies him as being part of this community. And then in the statement there is a, one of the things that the police officer, the detective has, what he do is come in and sign his name on the back of Washington's photograph. Right. So that there is, apart from those two witnesses, I'm not aware of anybody or anyone else who puts Washington in Hill Creek. And then, of course, there are references to this in the prosecutor's opening statement. Okay. Mr. Rowe, do you know whether or not after the Supreme Court's decision in Wright v. Woodall, whether there were a number of GVRs that were entered by the Supreme Court? I am not, I believe that there was, I'm aware of one. I'm not honestly, one of the things I meant to check on, and I just can't honestly say that I've done that. I could submit a letter if you want me to. So you're aware of one other? And I don't even, I'm aware of other cases in the Third Circuit dealing with the Bruton issue. And I know that there have been cases argued in this context. But I'm not aware, broadly speaking, whether or not there have been other remands based on Woodall. I'd like to continue with the Court's decision in Gray, I would submit, is that any obvious use, where a Brutonized statement obviously refers to a defendant other than the declarant, that the use of such an obvious statement is impermissible. The concept is, if you look at the trilogy of cases, you have the Bruton case, which was explicit. You have the Richardson case, which completely removed any reference to Marsh. And then you have Gray dealing with the middle ground, where it doesn't have a Bruton explicit name reference, but you have something different than what you had in Richardson or Marsh. And I submit that that is a very familiar approach for the lawyers and prosecutors and judges who are analyzing and applying Supreme Court precedent. We're given sort of a compass, three-point compass, and it allows us to navigate through each case. The intent of the Woodall decision is not to throw out that approach and say, okay, well, you can't do that anymore, we're going to sort of a Napoleonic system where the Supreme Court has to deal with each specific factual circumstance. Does this involve a photograph that somebody wrote their name on the back? Does it involve a name such as the driver? How long did the person know this? The Supreme Court doesn't generate cases or principles that are so fact-specific. The Supreme Court has given us in the Gray decision and this line of authority a principle, a rule of law that can be applied. And applying that in the manner the court did previously here is completely consistent with the Woodall decision. Thank you. Mr. Douglas, rebuttal. Thank you, Your Honor. It seems to me that we're talking, I'm talking at cross purposes, so I want to make sure I get my position out there before the red light turns on, and that's this. The Supreme Court has never held or even stated that linkage to other evidence or circumstances can convert a neutral redaction into a prudent violation. In fact, Richardson says the opposite. I've cited cases in my brief from courts around the country where other courts have said, have made exactly the same distinction that the Pennsylvania Supreme Court made in Travers, which is taken from language in Richardson that linkage to other evidence is different. In Gray, another point, in Gray the Supreme Court cited to, I think it was Garcia and Maggio, two cases, one from the Fifth, one from the Eighth Circuit, in which Garcia is an example. The statement there was redacted to say that the co-defendant was directed to a residence to pay the money to someone, and the DEA agent said, yes, he came to the residence and he paid the money to him. So the fact that there's incriminating evidence, and that was cited with approval in Gray, the fact that there is incriminating evidence apart from the statement does not answer the question, because as I was saying earlier, what Bruton says is we're not saying, we're not trying to eliminate any incriminating linkage or any possibility of incrimination from the co-defendant statement. We're saying that in this particular circumstance, an instruction that you cannot use this against the defendant won't work, because it's too jarring when they hear the name. And then in Gray, it says it's too jarring when you hear deleted. But it's not too jarring when it's only dependent on linkage with other evidence, and that's my argument. Well, thank you, and we all obviously let you get your two minutes in uninterrupted. Thank you very much. At this point, I think our questions largely suggested, however, that we're focused on the statement itself. Let me, in closing, ask one question, though, and it is not something I asked you during your argument, primary argument, because I didn't think it was particularly relevant, but I touched on it to Mr. Rose. Practically speaking, do you really think that this was not only not a particularly effective, but maybe not even an appropriate way for the prosecutor and the trial court to have proceeded at trial to utilize what obviously was corroborative evidence, and that in and of itself, as a quantum of evidence, makes it offensive to the confrontation clause, as it was used here? Would you teach a prosecutor to do that? I'm not sure that's a fair question. All right. I'll withdraw it. I've made my point.